**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| BOJAN PAP, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-02025-TWP-MJD |
| | ) | |
| LAUREN LAWSON, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING RESPONDENT'S MOTION TO DISMISS**
**AND DIRECTING PARTIES CONTACT THE MAGISTRATE JUDGE**

This matter is before the Court on Respondent Lauren Lawson's ("Lawson") Motion to Dismiss Petitioner's Verified Complaint and Petition for Issuance of a Show Cause Order and for Return of Minor Child to Ireland filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 7). Petitioner Bojan Pap ("Pap"), an Irish citizen, and Respondent Lawson, a United States citizen, are the parents of a two-year-old child, "AVLP." In March 2026, Lawson allegedly took AVLP to Indiana under false pretenses and has refused to return AVLP to Ireland. Pap initiated this action under the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.*, seeking AVLP's return to Ireland. For the following reasons, the motion to dismiss is **denied**.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Pap as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). These background facts are not intended to provide a comprehensive

explanation of all the facts presented in this case; rather, it provides the background relevant to the issues before the Court.

Petitioner Pap is a citizen of Ireland and the European Union currently residing in Ireland (Filing No. 1 ¶¶ 7, 27). Respondent Lawson, the biological mother of AVLP, is a United States citizen currently residing with AVLP in Indiana, where Lawson's family lives. *Id.* ¶¶ 8–9. AVLP is a United States citizen and is validly registered as a United States Foreign Birth in Ireland. *Id.* ¶ 12.

Pap has lived in Ireland since around 2001. Pap and Lawson began continuously living together in 2019, when Lawson first moved to Ireland. *Id.* ¶¶ 14–15, 28. Pap and Lawson were engaged but never married. *Id.* ¶ 13. From 2019 to August 2023, the couple lived together in Ireland. In August 2023, they traveled to Indiana for the birth of AVLP, who was born on September 16, 2023 in Seymour, Indiana. *Id.* ¶ 18. From August 2023 (or September 16, 2023, for AVLP) until February 29, 2024, Pap, Lawson, and AVLP lived together with Lawson's family in Indiana. *Id.* ¶ 18. The trio took one trip to Ireland during this time (from January 18 to January 28, 2024) to visit Pap's family before flying back to Indiana.

On February 29, 2024, Pap returned to Ireland to start a new job and prepare an apartment ahead of Lawson and AVLP's impending return to Ireland. Lawson and AVLP returned to Ireland on May 29, 2024, with the intention of permanently residing there with Pap as a family. *Id.* ¶¶ 21–23. They all moved into an apartment near the end of May 2024. They remained there until March 16, 2025, other than a short intervening trip to Indiana in August/September 2024. *Id.* ¶¶ 24–26.

On or around March 16, 2025, Lawson took AVLP on another trip to Indiana. Lawson had told Pap that the purpose of this trip was to visit family, and that she and AVLP would return to Ireland on April 24, 2025. *Id.* ¶ 31. Round-trip flights were booked for those dates before Lawson and AVLP left. *Id.* ¶ 32. On April 23, 2025, however, Lawson told Pap that she had scheduled a

July 9, 2025 appointment for AVLP, and that they would need to stay in the United States until then. Lawson then ceased all communications with Pap and refused to return AVLP to Ireland. *Id.* ¶ 36. To date, Lawson and AVLP remain in Indiana. *Id.* ¶ 37.

Pap initiated this action in October 2025. The next month, Lawson filed the instant Motion to Dismiss (Filing No. 7). Pap filed a response (Filing No. 11), but Lawson did not file a reply. Instead, in February 2026, Lawson filed her Answer to Pap's Complaint (Filing No. 12).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation modified). To be facially plausible, the complaint must

3

allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   DISCUSSION

"The Hague Convention was adopted in 1980 in response to the problem of international child abductions during domestic disputes. The Convention aims to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Redmond v. Redmond*, 724 F.3d 729, 736–37 (7th Cir. 2013) (citation modified) (quoting *Abbott v. Abbott*, 560 U.S. 1 (2010); *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012)). One of the Hague Convention's main purposes is to "secure the prompt return of children wrongfully removed to or retained in" another signatory State. Hague Convention art. 1, T.I.A.S. No. 11670. The United States implements the Hague Convention via the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.* ("ICARA").

"The central question in any petition seeking the return of a child under the Hague Convention and ICARA is whether the child who is the subject of the petition has been 'wrongfully' removed or retained within the meaning of the Convention." *Redmond*, 724 F.3d at 737. Under Article 3 of the Hague Convention, a removal is "wrongful" if:

> a) it is in breach of rights of custody attributed to a person, . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention[,] those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention art. 3, supra, T.I.A.S. No. 11670.

At this stage, Lawson argues only that the alleged removal of AVLP was not "in breach of the custody rights of [Pap] under the laws of [Ireland]" because Pap had no custody rights under Irish law (Filing No. 8 at 5–8). Lawson asserts that pursuant to Ireland's Guardianship of Infants

4

Act (the "Act"), an unmarried mother is considered the sole guardian of her child, and an unmarried father must apply for custody rights with an Irish court. Guardianship of Infants Act 1964 (Act No. 7/1964) (Ir.).[1] The Act, as originally enacted, provides that "[t]he father and mother of an infant shall be guardians of the infant jointly," but the applicable definition of "father" excludes "the natural father of an illegitimate infant." *Id.* Part II, § 6(1); *id.* Part I, § 2. Lawson also cites *Redmond v. Redmond*, a 2013 decision from the Seventh Circuit Court of Appeals, in which the court noted that the petitioner, an unmarried father, "had no custody rights under Irish law" because "unmarried fathers in Ireland are not legally recognized as parents, although they may petition a court for guardianship and custody rights." 724 F.3d at 731.

In response, Pap argues that he does have custody rights pursuant to Ireland's Children and Family Relationships Act 2015 (the "2015 Amendments"), which amended several parts of the Act.[2] *See* Children and Family Relationships Act 2015 (Act No. 9/2015) (Ir.)[3]; Guardianship of Infants Act 1964 Revised (Act No. 7/1964) (Ir.).[4] Pap cites both the relevant provisions of the 2015 Amendments, as well as the opinions of his Ireland-based legal counsel, Beth Gilhooly, BL ("Ms. Gilhooly").

The Court's interpretation of Irish law is a question of law, and in deciding this question, the Court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1; *see Baz v. Patterson*, 100 F.4th 854, 870 (7th Cir. 2024).

---

[1] https://www.irishstatutebook.ie/eli/1964/act/7/enacted/en/print.html.

[2] The Act has since been further amended by the Family Courts Act 2024 (Act No. 48/2024) (Ir.), and the Health (Assisted Human Reproduction) Act 2024 (Act No. 18/2024) (Ir.), effective April 9, 2026. These amendments, however, appear to have no effect on the Act's provisions relevant to Lawson's Motion to Dismiss.

[3] https://www.irishstatutebook.ie/eli/2015/act/9/enacted/en/print.

[4] https://revisedacts.lawreform.ie/eli/1964/act/7/front/revised/en/html.

The 2015 Amendments, in part, insert a new section into the Act (Part II, Section 6B), which provides that a parent (other than a parent who has married the child's mother) "shall be a guardian of the child where . . . (b) the circumstances in subsection (3) apply." Children and Family Relationships Act 2015, Part 4, § 49. The circumstances in Subsection 3, in turn, are:

> that the person and the mother of the child concerned have been cohabitants for not less than 12 consecutive months . . . which shall include a period, occurring at any time after the birth of the child, of not less than three consecutive months during which both the mother and the person have lived with the child.

*Id.*

The 2015 Amendments reach the same result through the amended definitions of "parent" and "father." "Parent" is defined to mean "a father or mother" as defined in Part I, Section 2(1), and "father" in amended Section 2(1) is defined to include unmarried fathers if "(d) the circumstances set out in subsection (4A) of this section apply." *Id.*, Part 4, § 43. The circumstances in Subsection 4A, like the above subsection, are that the father and mother are unmarried but "have been cohabitants for not less than 12 consecutive months," including a period "of not less than three consecutive months during which both the mother and father have lived with the child." *Id.*

Ms. Gilhooly further provides the following relevant legal opinion:

> For children born to parents that are not married to each other, only the mother has an automatic right to guardianship. . . . However, an unmarried parent will automatically be a guardian if they have has to be [*sic*] cohabiting with the mother of the child, for a consecutive period of 12 months and a period any time after the birth of the child, of not less than three consecutive months, with both the mother and the child together, as set out above in section section [*sic*] 6B (3) into [*sic*] the 1964 Act.

(Filing No. 11-1 at 2).

Lawson's opening brief fails to address the 2015 Amendments to the Act, and she did not file a reply to Pap's response. The Complaint alleges that Pap cohabitated with Lawson for a consecutive period of at least 12 months (from 2019 to February 29, 2024), including a period of

at least 3 months after AVLP's birth, when he cohabitated with Lawson and AVLP (from September 16, 2023, to February 29, 2024). As the Court must do at this stage of the proceedings, the Court takes as true the allegations in the Complaint and draws all reasonable inferences in favor of Pap. The Court finds that Pap has adequately alleged that he has custody rights under the laws of Ireland, and he has sufficiently asserted a claim that the removal of AVLP was "wrongful" under the Hague Convention. Accordingly, dismissal of this action is not warranted.

## IV.   CONCLUSION

For the reasons discussed in this Order, Lawson's Motion to Dismiss (Filing No. 7) is **DENIED**. Lawson has already filed an Answer to Pap's Complaint (Filing No. 12), so no further responsive pleading is required. The parties are **DIRECTED** to contact the chambers of the Magistrate Judge within **three (3) days** from the date of this Order to schedule a Status Conference to discuss a case management plan, the possibility of settlement, and the scheduling of an evidentiary hearing  if needed.

**SO ORDERED**.

Date:   4/14/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Christopher Lynn Clerc
Beck Rocker LLC
cclerc@beckrocker.com

Anthony G Joseph
Master Law Group, LLC
ajoseph@masters-lawgroup.com

7