UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BOJAN PAP, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02025-TWP-MJD |
| | ) | |
| LAUREN LAWSON, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING RESPONDENT'S MOTION FOR ABSTENTION AND STAY OF FEDERAL PROCEEDINGS**

Respondent Lauren Lawson has filed a Motion for Abstention and Stay of Federal Proceedings.  [Dkt. 18.]  For the reasons explained below, the motion is **DENIED**.

### I. Background

Petitioner Bojan Pap brings this petition against the mother of his minor child, Respondent Lauren Lawson, under the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction and Removal Act ("ICARA"), 22 U.S.C. §§ 9001-11.  [Dkt. 1.]

Pap claims that Lawson abducted their minor child from their family home in Ireland in March 2025 and brought the child to the United States.[1]  *Id.*  In April 2025, Lawson initiated paternity and custody proceedings over the minor child in an Indiana state court.  *See In re A.V.L.P.*, Ind. Cause No. 07C01-2504-JP-35 (Brown County Circuit Court).  The custody petition

---

[1] More specifically, Pap claims that Lawson brought their child to the United States on the pretense of taking a brief trip to visit family and then kept the child in the United States with the intention of remaining here permanently.  [Dkt. 1 at ¶ 1.]

sought "to establish paternity and establish orders with regard to custody, parenting time, child support, and all other related matters."  [Dkt. 25-1 at 6.]

The state court held a hearing on July 2, 2025.  *Id.* at 37-38.  Lawson appeared in person and by counsel.  *Id.*  Pap appeared *pro se* by Zoom from Ireland.  *Id.*  The minute entry from this hearing states, in relevant part, "[w]hile Father has received notice of the case and of this hearing, Father has not yet been served under the applicable rules of the Hague Convention. Substantive issues in the case cannot be addressed until Service of Father is shown." [2]  *Id.* at 37. The state court continued the hearing for sixty days in order to formally serve Pap and allow him to hire counsel.  *Id.* at 37-38.

On September 5, 2025, the state court received correspondence from the U.S. State Department's Office of Children's Issues, informing the court that "an application for the return of [the minor child] to Ireland under the [Hague Convention]. . . has been received by the Department of State, which serves as the U.S. Central Authority for the Convention.  This fact may affect your administration of the custody proceeding before you."[3]  *Id.* at 58.

The state court held another hearing on September 10, 2025.  *Id.* at 60-61.  The minute entry from this hearing again states that Pap had not been formally served under the Hague Convention and that substantive issues could not be addressed until formal service was shown. *Id.* at 60.

---

[2] In this context, the state court was referencing the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), 20 U.S.T. 361, T.I.A.S. No. 6638, and not the 1980 Hague Convention on the Civil Aspects of International Child Abduction, which is the subject of this federal action.

[3] In her abstention motion, Lawson characterizes this correspondence as a "pro se letter[],"[Dkt. 25 at 5], but the record is clear that this correspondence came directly from the State Department and was not submitted by Pap as a *pro se* filing.

On September 29, 2025, Lawson filed a motion titled, "Motion Regarding Hague Issues and Jurisdiction." *Id.* at 86-92. In that motion, Lawson argued that, contrary to earlier belief, Pap had in fact been served with her custody petition in June 2025. *Id.* at 87. She also noted that Pap had contacted the Central Authority of Ireland and the Central Authority of the United States (*i.e.*, the State Department's Office of Children's Issues) regarding the alleged child abduction.[4] *Id.* at 88. Importantly, Lawson stated, "**There is no pending Article 16 Hague Petition at this time**, and Father has now been served pursuant to Hague for over ninety (90) days. Thus, there are no present issues from Hague Conventions which prevent this Court from establishing jurisdiction." *Id.* at 91 (emphasis added). Lawson noted that federal and state courts have concurrent jurisdiction over Hague petitions and asked the state court to "give a reasonable deadline for Father to file any Notice based on Article 16 of the 1980 Convention." *Id.* at 91.

On October 2, 2025, the state court ruled on Lawson's motion:

> Father affirmatively petitioned this Court for relief citing Article 16 of the 1980 Hague Convention on the Civil Aspects of International Child Abduction in these proceedings. Father has not followed all formal requirements of the Treaty or Federal Law (ICARA), but this delay is in part attributable to the service issue as the Court understood it at that time. **Father was not permitted to fully orally present on this issue at a prior hearing** because his service was still believed to be outstanding during the hearing in which he raised the Petition. The Court grants Father leave to amend his oral Petition through a written filing within thirty days of the date of this Order. Mother shall have fifteen days from the date that Father files to respond. The Court declines to rule further on this subject at this time.

*Id.* at 96 (emphasis added).

Pap did not file or amend a Hague petition in state court in response to that order. Instead, he filed a Hague petition in this Court the very next day, October 3, 2025. [Dkt. 1.]

---

[4] Under the Hague Convention, the left-behind parent may seek assistance from the contracting States' Central Authorities to coordinate the voluntary return of the minor child to the State of habitual residence, and may also pursue a claim for compulsory return of their minor child through judicial proceedings. *See* Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670 U.N.T.S. 89 ("Hague Convention") Art. 7(c), 12; *see also* 22 U.S.C. § 9003.

Then, he filed a "Motion to Stay" the state court proceeding pending the resolution of his federal Hague petition. [Dkt. 25-1 at 98-100.] The state court granted Pap's Motion to Stay on October 27, 2025. *Id.* at 102.

## II. Abstention Doctrines and Hague Petitions

When there is no serious threat of interference with state proceedings, federal courts have a "virtually unflagging obligation" to resolve the questions before them over which they have jurisdiction. *Vega v. Chicago Board of Education*, 109 F.4th 948, 957 (7th Cir. 2024). Here, the Court has jurisdiction over Pap's Hague petition pursuant to ICARA. 22 U.S.C. § 9003(a). But Lawson seeks federal abstention under the doctrines set forth in *Younger v. Harris*, 401 U.S. 37 (1971), and *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), arguing that Pap's Hague petition should be decided by the state court in which she initiated her paternity and custody action. [Dkt. 25.]

Federal abstention is rooted in "deference to the paramount interests of another sovereign" and traditional principles of equity, federalism, and comity. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996); *Courthouse News Service v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). Under *Younger* and its progeny, federal courts must abstain from cases that will intrude upon state proceedings that are judicial in nature, implicate important state interests, and offer an opportunity for review of federal defenses, so long as no extraordinary circumstances exist that would make abstention inappropriate. *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002). This rule applies only to federal cases that intrude upon state criminal prosecutions, state civil enforcement proceedings, or state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts. *Mulholland v. Marion County Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014). *Colorado River* abstention turns on two inquiries: whether

4

state and federal proceedings are parallel, and if so, whether exceptional circumstances warrant abstention. *GeLab Cosmetics LLC v Zhuhai Aobo Cosmetics Co., Ltd.*, 99 F.4th 424, 428 (7th Cir. 2024). Both inquiries "put a thumb on the scale against abstention[.]" *Id.*

An appropriate federal Hague petition will necessarily intrude on a pending child custody case in state court. Indeed, "[t]he entire purpose of the Convention is to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction." *Walker v. Walker*, 701 F.3d 1110, 1116 (7th Cir. 2012); *see also* Hague Convention Art. 1(b) ("The objects of the present Convention are . . . to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States"); *Abbott v. Abbott*, 560 U.S. 1, 8 (2010) (explaining that the Hague Convention "was adopted in 1980 in response to the problem of international child abductions during domestic disputes"). To that end, upon receiving notice of a Hague issue, "the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention[.]" Hague Convention Art. 16. ICARA grants concurrent jurisdiction over Hague petitions to both state and federal courts, and the left-behind parent is granted their choice of forum. § 9003(a)-(b). Thus, when one parent abducts a minor child to the United States and begins a child custody proceeding in state court, the left-behind parent can halt the state proceeding by filing a Hague petition in federal court, and the state case will only resume if the abducting parent defeats the left-behind parent's federal Hague petition.

The Third Circuit Court of Appeals has explained the interplay between federal abstention doctrines, child custody cases, and federal Hague petitions as follows:

Although the federal courts applying abstention doctrines to Hague Convention Petitions have reached different results as to whether to exercise abstention, there is a pattern in their analyses. In a situation where there is a state court custody proceeding and a petition is filed in federal court under the Hague Convention, but the Hague Convention has not been raised, or raised but not litigated, in the state court, the federal court has generally found that abstention is not appropriate. Where the Hague Convention Petition has been **raised and litigated** in the state court, abstention by the federal court has generally been found to be appropriate.

*Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (collecting cases) (internal citations omitted) (emphasis added); *see also Walker*, 701 F.3d at 1116 (citing *Yang* with approval); *Barzilay v. Barzilay*, 536 F.3d 844, 852 (8th Cir. 2008) (holding that *Younger* abstention does not apply in Hague cases, particularly when a Hague issue is raised in state court "only by way of support for [an] argument that the state court should not have ruled on the custody issue").

A district court's ultimate abstention decision is reviewed for an abuse of discretion, and legal questions underlying that decision are reviewed *de novo*. *Courthouse News Service*, 908 F.3d at 1068.

### III. Discussion

The outcome of Lawson's abstention motion turns on what exactly transpired in state court before Pap filed this lawsuit. Here, Pap's Hague issue was not litigated in state court—and indeed, he was not even permitted to raise the issue fully in that forum during the hearings in July and September 2025. This is clear from Lawson's own state court motion, which she filed five days before Pap filed his federal Hague petition. *See* [Dkt. 25-1 at 91] ("There is no pending Article 16 Hague Petition at this time."). As the Third Circuit Court of Appeals explained in its review of Hague cases from across the country, merely raising a Hague issue in state court does not support federal abstention when the Hague issue was not actually litigated in that forum. *Yang*, 416 F.3d at 202.

6

Lawson relies on *Bordelais v. Bordelais*, 2017 U.S. Dist. LEXIS 208615 (N.D. Ill. Dec. 19, 2017), but, in addition to being non-precedential, *Bordelais* is distinguishable from the case at bar. In *Bordelais*, one parent brought a minor child to the United States and initiated child custody proceedings in state court. *Id.* at *2. The left-behind parent then filed a Hague petition for the child's return in a separate state court action. *Id.* The state court consolidated the custody action and the Hague petition, and the abducting parent filed an answer to the Hague petition that set forth specific affirmative defenses. *Id.* The left-behind parent then filed "an exact copy of the petition he filed in the state court" in a new federal Hague proceeding. *Id.* The district court determined that the cases were parallel for purposes of *Colorado River*, that the *Colorado River* factors supported staying the federal Hague petition, and that "the issues raised in [the left-behind parent's federal Hague] petition [were] being litigated" in state court as evidenced through the abducting parent's answer and affirmative defenses. *Id.* at *6-8.

Unlike *Bordelais*, Pap did not file identical Hague petitions in state and federal court. Instead, he attempted, but was not permitted, to raise Hague issues orally during hearings at which he proceeded without counsel. When he was finally granted leave to file a Hague petition in state court, he instead chose to file one in federal court, as was his right under ICARA. § 9003(b). Unlike the abducting parent in *Bordelais*, Lawson did not answer the Hague petition in state court because Pap never filed one there.[5]

Lawson also relies on *Cerit v. Cerit*, 188 F. Supp. 2d 1239 (D. Haw. 2002), but *Cerit* is also non-precedential and distinguishable. In *Cerit*, the left-behind parent filed a written petition

---

[5] The Court notes that Lawson tried to present certain defenses in state court preemptively "should [a Hague petition] formally arise." [Dkt. 25-1 at 89]. The Court finds that this preemptive presentation of potential defenses for the state court's future consideration does not mean that a Hague petition was actually being litigated in state court when Pap filed his federal petition. To hold otherwise would clear a path for the abducting parent to race to the courthouse, present their Hague defenses preemptively to the state court, and thereby deprive the left-behind parent of their chosen forum.

in the state court custody proceeding that "addressed at length the Hague Convention and its relevant articles, stating that Petitioner 'is entitled to this Court's assistance pursuant to the Hague Convention' in obtaining the prompt return of [his minor children]." *Id.* at 1244. The left-behind parent, by counsel, had also affirmatively announced during a state court hearing that he intended to have his Hague petition litigated in state court rather than federal court. *Id.* The state court had also issued multiple substantive rulings against the left-behind parent, which may have motivated the left-behind parent to rethink his choice of forum and attempt to redirect the proceedings to federal court. *Id.* at 1242-43, 1251 ("Petitioner vigorously litigated his ICARA petition in state court for three months prior to seeking resolution of the matter in federal court. It appears from the record that Petitioner, unhappy with the proceedings in state court, is attempting to obtain a different result from the federal court. This is classic forum shopping.").

Again, in the present case, Pap did not "vigorously litigate[]" a Hague petition in state court before filing a Hague petition in federal court. *Id.* at 1251. He never filed a written Hague petition in state court that "addressed at length the Hague Convention and its relevant articles," *id.* at 1244, and there is no evidence to suggest that Pap affirmatively sought to litigate his Hague petition in state court rather than federal court while appearing *pro se* via Zoom from Ireland, as Lawson currently argues. *See* [Dkt. 25-1 at 91] (Lawson arguing to the state court on September 29, 2025, that "[t]here is no pending Article 16 Hague Petition at this time"). In addition, the state court had not issued any substantive rulings with respect to the Hague issues or the underlying child custody issues before Pap filed his federal Hague petition. The Court is not persuaded that the state court's finding that Pap had been served with the custody petition earlier than previously thought reflected the state court's intention to rule against him on his Hague petition, as Lawson appears to argue.

8

Lawson accuses Pap of "forum shopping." Pap chose to file his Hague petition in federal court and not in state court. ICARA gives him that right. *See* § 9003(b). But the Court finds no support for Lawson's assertion that Pap did so insidiously "to obtain a different result from the federal court." [Dkt. 25 at 12.] When Pap filed his federal Hague petition, the state court had not ruled on the Hague issue, the parties had not litigated the Hague issue, Pap had not filed a Hague petition, Pap had not been permitted to fully present an oral Hague petition, and the record does not indicate that Pap was "unhappy with the proceedings" or that the state court was inclined to rule against Pap on any claims he might have brought under the Hague Convention.

Finally, the state court's decision to stay its own proceedings voluntarily pending the resolution of Pap's federal Hague petition further belies Lawson's argument that principles of comity and federalism warrant federal abstention in this specific case. *See* [Dkt. 25-1 at 102] (stay order); *Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 569 (1983) (explaining, in dicta, that in the context of water rights cases, "the federal courts need not defer to the state proceedings if the state courts expressly agree to stay their own consideration of the issues raised in the federal action pending disposition of that action"). The purpose of *Colorado River* abstention is to ensure that parallel claims are not litigated in state and federal court simultaneously. Here, given the state court's stay order, the federal Hague petition is the only aspect of the Parties' dispute that is actively being litigated.

In sum, the Court finds that a Hague petition was not being litigated in state court when Pap filed his federal Hague petition. As the left-behind parent, Pap can choose whether to file a Hague petition in either state or federal court. The fact that the state court imposed a deadline, on Lawson's motion, for Pap to file a Hague petition in state court did not deprive Pap of his choice of forum and did not obligate him to file his Hague petition in state court rather than

9

federal court.  The state court also voluntarily stayed its own proceedings pending the resolution

of Pap's federal Hague petition, which belies concerns of comity and federalism and militates

against a federal stay.  Accordingly, abstention is not appropriate under *Younger* or *Colorado*

*River*, and Lawson's abstention motion is **DENIED**.[6]

### IV. Conclusion

For the reasons explained above, Lawson's Motion for Abstention and Stay of Federal

Proceedings [Dkt. 18] is **DENIED**.

SO ORDERED.

Dated:  22 APR 2026

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via CM/ECF

---

[6] Because the Court finds that Pap's Hague petition was not being litigated in state court when he initiated this proceeding, it need not consider the ten non-dispositive guidepost factors that the Seventh Circuit has articulated for the exceptional circumstances element of *Colorado River* abstention motions.  *See GeLab Cosmetics LLC,* 99 F.4th at 430-31 (courts need only engage in the exceptional circumstances analysis when it finds that there is a parallel case proceeding in federal court).